IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN T. SHINGARA, | : | CIVIL ACTION NO. 1:05-CV-1807 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| JEFFREY MILLER and JACK LEWIS, | : | |
| Defendants | : | |

## MEMORANDUM

This is a § 1983 action filed by John T. Shingara ("Shingara"), an employee of the Pennsylvania State Police ("State Police") who has an expertise in radar equipment. (Doc. 17 ¶ 1; Doc. 21 ¶ 1.) The defendants are State Police Commissioner Jeffrey Miller ("Miller") and Chief Public Relations Official Jack J. Lewis ("Lewis"). Shingara alleges that defendants violated his First, Seventh, and Fourteenth Amendment rights when they spoke publicly about alleged radar equipment malfunctions. Presently before the court is defendants' motion for summary judgment (Doc. 15). For the reasons that follow, the motion will be granted.

### I. Statement of Facts[1]

In September 2003, Shingara testified in a state court proceeding regarding an alleged malfunction affecting certain State Police radar detectors. On March 23,

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, the non-moving party. See infra Part II.

2004, Shingara filed a lawsuit pursuant to 42 U.S.C. § 1893 (hereinafter "Shingara I"), alleging that three state police employees retaliated against him because he chose to exercise his First Amendment right to testify in the state court proceeding.[2] (Doc. 17 ¶¶ 2-4; Doc. 21 ¶¶ 2-4.)

On December 8, 2004, while Shingara I was pending, an article concerning State Police radar detectors was posted on the website www.philly.com. (Doc. 17 ¶ 5; Doc. 21 ¶ 5.) The article described the radar detectors as "error prone" and used phrases such as "radar scandal," "top brass . . . decided to keep the problem secret," and "phantom speed readings." (Doc. 17 ¶¶ 5-6; Doc. 21 ¶¶ 5-6.) The article quoted Shingara's attorney, Don Bailey, as saying:

> [The State Police] know they could be subjected to thousands of lawsuits and they deserve to be, because thousands of Pennsylvanians undoubtedly have been unjustly convicted based on this faulty equipment they knew about.
>
> This is criminal.
>
> There needs to be a federal grand jury investigation of what they did because they are intentionally letting people be convicted that didn't break the law. And they are letting troopers innocently testify to judges that this equipment works properly.

(Doc. 17 ¶ 7; Doc. 21 ¶ 7.) Additional articles addressing the radar issue were published in several newspapers around the state at approximately the same time. (Doc. 17 ¶ 12; Doc. 21 ¶ 12.)

---

[2] Shingara I was initially assigned to the Honorable Sylvia H. Rambo. (No. 1:04-CV-0621, Doc. 2.) On September 13, 2005, Judge Rambo reassigned this case to the undersigned. (No. 1:04-CV-0621, Doc. 62.) The undersigned granted judgment in favor of defendants on January 24, 2007. (No. 1:04-CV-0621, Doc. 94.)

On December 14, 2004, the defendants in Shingara I moved for a protective order, arguing that the information that attorney Bailey had provided to the media should not have been disclosed because it had been obtained through the discovery process. Judge Rambo granted the defendants' motion for a protective order.[3] (No. 1:04-CV-0621, Doc. 42.) Judge Rambo's decision was based, in large part, upon her interpretation of Local Rule 83.2.7 and Pennsylvania Rule of Professional Conduct 3.6.[4] (Id.)

The day after the protective order was issued, Miller responded to a newspaper article addressing the radar issue. (Doc. 17 ¶ 13; Doc. 21 ¶ 13.) On

---

[3] Following a reversal and remand by the Third Circuit Court of Appeals, the protective order was vacated by order of court dated September 27, 2005. (No. 1:04-CV-0621, Doc. 66.)

[4] Local Rule 83.2.7 provides, in pertinent part, as follows:

> A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making any extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a *reasonable likelihood that such dissemination will interfere with a fair trial* . . . .

L.R. 83.2.7 (emphasis added). Pennsylvania Rule of Professional Conduct 3.6 provides, in pertinent part, as follows:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a *substantial likelihood of materially prejudicing* an adjudicative proceeding in the matter.

PA. RULES OF PROF'L CONDUCT R. 3.6 (emphasis added).

December 17, 2004, Lewis responded to a similar article.[5]  (Doc. 17 ¶ 16; Doc. 21 ¶ 16.)  Defendants assert that the purpose of these communications was to "correct erroneous conclusions presented to the public by the press about the radar sets."  (Doc. 17 ¶ 17.)  Shingara counters that the communications "were intended as propaganda to conceal and mislead the public concerning the issues."  (Doc. 21 ¶ 17.)

On September 6, 2005, Shingara filed the instant action ("Shingara II") pursuant to 42 U.S.C. § 1983.  (See Doc. 1.)  Specifically, Shingara contends that defendants:  (1) retaliated against him for exercising his First Amendment rights to testify and to file a federal complaint, (2) violated his Seventh Amendment right to a

---

[5] These responses by Miller and Lewis were not the first statements made by representatives of the State Police on the radar issue.  On March 9, 2004, Miller issued a press release responding to an article printed in the Philadelphia Daily News on the radar issue.  (Doc. 17 ¶ 18; Doc. 21 ¶ 18.)  Furthermore, information on the radar issue had been posted on the State Police website since December 15, 2003.  (Doc. 17 ¶ 19; Doc. 21 ¶ 19.)

fair trial, and (3) violated his Fourteenth Amendment right to due process.[6]
(Doc. 1.)  Defendants filed the instant motion for summary judgment (Doc. 15), alleging that defendants' actions had not violated any of Shingara's constitutional rights.  The motion has been fully briefed and is ripe for disposition.

## II.  Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986);

---

[6] Shingara also argues that his rights were violated by Judge Rambo's allegedly unconstitutional interpretation of Local Rule 83.2.7 and Pennsylvania Rule of Professional Conduct 3.6.  (Doc. 1 ¶ 6.)  While the Third Circuit has not specifically addressed the constitutionality of these rules, cases interpreting similar rules suggest that the rules would be deemed constitutional on their face.  See Gentile v. State Bar of Nev., 501 U.S. 1030, 1075 (1991) (holding that "substantial likelihood test," identical to that contained in Pennsylvania Rule of Professional Conduct 3.6, was constitutional); United States v. Wecht, Cr. No. 06-0026, 2006 WL 1619199, at *6 (W.D. Pa. 2006) (holding that "reasonable likelihood" test, identical to that contained in Local Rule 83.2.7, was constitutional).  Furthermore, the defendants in this action bear no responsibility for the court's application of this Local Rule.  Accordingly, the court will grant summary judgment in favor of defendants on Shingara's claims that Local Rule 83.2.7 and Pennsylvania Rule of Professional Conduct 3.6 are unconstitutional without further discussion.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

**III.     Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.  Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Shingara's complaint includes three distinct § 1983 claims: (1) retaliation in violation of the First Amendment, (2) deprivation of the right to a fair trial in violation of the Seventh Amendment, and (3) deprivation of the right to due process

in violation of the Fourteenth Amendment. The court will address each of these claims *seriatim*.

### A.     Retaliation

The First Amendment "protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 126 S. Ct. 1951, 1957 (2006). To state a prima facie claim of retaliation, a public employee must allege that: (1) the activity in question is protected by the First Amendment, (2) the defendants' acts were retaliatory, and (3) the protected activity was a "substantial motivating factor" of the alleged retaliation. Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006); see also Chambers v. Pennsylvania, Civ. A. No. 1:04-CV-0714, 2006 WL 3831377, at *7 (M.D. Pa. Dec. 28, 2006); Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001). A defendant can rebut a *prima facie* case of retaliation by showing that "the same adverse action would have taken place in the absence of the protected conduct." Chambers, 2006 WL 3831377, at *7; see also Baldassare, 250 F.3d at 194. Whether the activity is protected is a question of law, while the remaining inquiries are questions of fact. Hill, 455 F.3d at 241.

In the matter *sub judice*, Shingara alleges that he engaged in a protected activity by: (1) testifying in Cumberland County Court, and (2) filing the complaint in Shingara I. Defendants do not contest that Shingara engaged in protected speech, but argue that no retaliatory actions were taken against Shingara in response to that speech. Shingara alleges that defendants' communications with

7

the media regarding the radar issue were done in retaliation for his protected speech.

To qualify as retaliatory, an employer's conduct must adversely affect an employee's First Amendment rights.  Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003); see also Breiner v. Litwhiler, 245 F. Supp. 2d 614, 632-33 (M.D. Pa. 2003) (holding that conduct must be sufficient "to deter a person of ordinary firmness from engaging in the First Amendment-protected activity" in order to qualify as retaliatory).  Determining whether a plaintiff's First Amendment rights were adversely affected is a "fact intensive inquiry focusing on the status of the speaker, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts."  Brennan, 350 F.3d at 419.  Retaliatory acts must be "more than *de minimis* or trivial" to adversely affect an employee's First Amendment rights.  Id. Decisions relating to "promotion, transfer, recall and hiring" are significant enough to qualify as retaliatory, while "criticism, false accusations, or verbal reprimands" are not.  Id.

In the action *sub judice*, defendants' communications with the media simply had no adverse effect on Shingara.  See Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) ("Section 1983 is a tort statute.  A tort to be actionable requires injury."). The communications did not even rise to the level of "criticism, false accusations, or verbal reprimands."  Brennan, 350 F.3d at 419.  Instead, the communications espouse defendants' position on the radar issue without demeaning, or even mentioning, Shingara.  (See Doc. 18, Ex. 6 at 6, 13.)  Although these

communications expressed views diametrically opposed to those of Shingara, that fact alone is insufficient to transform this discourse into retaliatory conduct. Therefore, a reasonable jury could not find that defendants' communications with the media constituted retaliatory action.

Even assuming *arguendo* that defendants' actions were retaliatory, the court finds no evidence to suggest that defendants' actions were motivated by Shingara's protected speech. To establish the causation element of a retaliation claim, a plaintiff must prove that the exercise of his First Amendment rights "played some substantial role" in motivating the retaliatory act. Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D. Pa. Apr. 13, 2006). If a plaintiff meets this burden, the defendant can rebut the claim of causation by showing that "the same adverse action would have taken place in the absence of the protected conduct." Chambers, 2006 WL 3831377, at *7; see also Baldassare, 250 F.3d at 194. The temporal proximity of a retaliatory act to a plaintiff's exercise of his First Amendment rights is probative of the causation element of a retaliation claim. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003).

Defendants assert that they communicated with the media for the non-retaliatory reason of rebutting information contained in prior news reports. Defendants' media communications occurred only days following publication of the prior news reports, but more than nine months after Shingara filed his lawsuit and more than fifteen months after he testified regarding the radar issue. See id. (discussing temporal proximity). The court finds no evidence which would tend to

demonstrate that defendants' asserted non-retaliatory reasons for communicating with the media were pretextual.  Accordingly, a reasonable jury could not conclude that defendants' communications were prompted by Shingara's protected speech, and the court will grant summary judgment in favor of defendants on Shingara's retaliation claim.

### B.    Right to Fair Trial

Shingara alleges that defendants' media communications were intended "to mislead the Middle District Court and affect the jury pool available for the [underlying] case in a planned effort to deny plaintiff a fair trial." (Doc. 1 ¶ 1.)  The right to a jury trial is a "fundamental right that is expressly protected by the Seventh Amendment to the United States Constitution." Bouriez v. Carnegie Mellon Univ., 359 F.3d 292, 294 (3d Cir. 2004).  However, the right to a jury trial exists only when there is some genuine issue of material fact to be determined. See In re TMI Litigation, 193 F.3d 613, 725 (3d Cir. 1999); see also CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2302 (2007).  In Shingara I, the court determined that no genuine issues of material fact existed and entered judgment in favor of defendants, (see No. 1:04-CV-0621, Doc. 94), thus mooting Shingara's Seventh Amendment issues.  Therefore, the court will grant defendants' motion for summary judgment with respect to Shingara's Seventh Amendment claims.

### C. Due Process

Shingara alleges that defendants violated his rights to due process by disseminating false information to the media in an effort to taint the jury pool. Defendants seek dismissal of Shingara's due process claims on grounds that he has not alleged the deprivation of an interest that is entitled to due process protection.

In response, Shingara fails to offer any argument to support his due process claim. Accordingly, the court concludes that Shingara has abandoned this claim. See D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (noting that abandonment of a position is tantamount to waiver); see also L.R. 7.6. Accordingly, the court will grant defendants' motion for summary judgment with respect to Shingara's due process claims.

### IV. Conclusion

For the forgoing reasons, defendants' motion for summary judgment (Doc. 15) will be granted, and this case will be closed. An appropriate order will issue.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:       February 15, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN T. SHINGARA,** | : | **CIVIL ACTION NO. 1:05-CV-1807** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **JEFFREY MILLER** and **JACK LEWIS**, | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 15th day of February, 2007, upon consideration of the motion for summary judgment (Doc. 15), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 15) is GRANTED.

2. The Clerk of Court is directed to enter JUDGMENT in favor of defendants and against plaintiff on all claims.

3. The Clerk of Court is directed to CLOSE this case.

                                      S/ Christopher C. Conner
                                      CHRISTOPHER C. CONNER
                                      United States District Judge